UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TERRA H., | ) |
|         Plaintiff | ) |
| v. | )   No. 2:21-cv-00301-GZS |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
|         Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Plaintiff in this Social Security Disability and Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) erred by finding that she would be able to perform work existing in substantial numbers in the national economy if she stopped using drugs. *See* Statement of Errors (ECF No. 11). For the reasons that follow, I recommend that the Court affirm the Commissioner's decision.

## I. Background

After the Plaintiff's claims were denied at the initial and reconsideration levels, she requested a hearing before an ALJ. *See* Record at 110-29, 149-50. The ALJ issued a decision in March 2021 finding that the Plaintiff had the severe impairments of substance abuse disorder (opioids) and a history of fractures of the lower limb and pelvis and that, with substance use, her impairments met the criteria of Listing 12.06 in Appendix 1 to 20 C.F.R. Part 404, Subpart P. *See* Record at 13-27.

1

The ALJ found, however, that if the Plaintiff stopped using drugs, her physical impairments would remain severe but her mental impairments would be non-severe. *See id.* at 19-21. The ALJ determined that, in the absence of substance use, the Plaintiff would have the residual functional capacity (RFC) to perform sedentary work except that she could push and pull at the sedentary weight limits with her upper and lower extremities bilaterally; never climb ladders, ropes, or scaffolds; frequently balance and kneel; occasionally crouch, crawl, and stoop; and frequently reach overhead bilaterally. *See id.* at 21. The ALJ found that with such an RFC, the Plaintiff could perform jobs existing in substantial numbers in the national economy, including the representative jobs of final assembler, order clerk, dowel inspector, bench worker, waxer/polisher, and security surveillance monitor. *See id.* at 25-26. Accordingly, the ALJ concluded that the Plaintiff's substance use was a contributing factor material to the determination of disability and that she was not disabled within the meaning of the Social Security Act because she would not be disabled if she stopped using drugs. *See id.* at 26-27. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-4, making that decision the final determination of the Commissioner, *see* 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the

administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

Under the Social Security Act, disability benefits are disallowed if a claimant would not be disabled if she stopped using drugs or alcohol—i.e., if the claimant's drug or alcohol addiction is a contributing factor material to the determination of disability. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535(b), 416.935(b); *Justin A. L. v. Saul*, No. 2:19-cv-00325-JDL, 2020 WL 2989071, at *2-3 (D. Me. June 3, 2020) (rec. dec.), *aff'd*, 2020 WL 3963867 (D. Me. July 13, 2020).

Here, the ALJ deemed the Plaintiff's substance abuse material to a finding of disability and concluded that her mental impairments would result in no more than mild limitations if she stopped her substance use. *See* Record at 19-21, 26-27. In reaching this conclusion, the ALJ relied, in part, on the opinions of agency nonexamining consultants Brian Stahl, Ph.D., and David Houston, Ph.D., who reviewed the Plaintiff's medical records at the initial and reconsideration levels in August 2018 and January 2019, respectively. *See* Record at 24-25, 110-29. The ALJ explained that she found Drs. Stahl's and Houston's opinions persuasive because

3

> Their findings that the [Plaintiff] had only mild findings of depression, but with episodic depression in the context of opiate dependence, are supported by a thorough review and summary of the [Plaintiff's] medical records, including noting that the [Plaintiff] reported abilities to perform regular activities of daily living. Moreover, their findings are consistent with the overall weight of evidence, which shows significant findings of drug abuse, but with otherwise intact findings on mental status examinations throughout the period at issue.

*Id.* at 24-25 (citations omitted).

The ALJ also relied to some degree on the opinion of James Claiborn, Ph.D. Noting that she found Dr. Claiborn's opinion "partially persuasive," the ALJ credited Dr. Claiborn's findings that the Plaintiff "would have no more than mild limitations in all 'paragraph B' areas of functioning[ ] in the absence of substance abuse." *Id.* at 24. But the ALJ rejected Dr. Claiborn's RFC assessment that, if the Plaintiff were not using drugs, she "could remember, understand and carry out simple to moderately complex tasks" and "interact with coworkers" and "supervisors" but could have only "occasional" interactions with the "general public" and could only adapt to "occasional changes." *Id.* at 24, 1865.

The Plaintiff does not dispute that she suffers from "severe opioid use disorder" but argues that the ALJ should have found that her mental impairments were severe even in the absence of drug use and that, therefore, the ALJ was wrong to find that her substance use was a material factor in her disability. Statement of Errors at 5-11. She first takes issue with the ALJ's reliance on Drs. Stahl's and Houston's opinions, contending that their opinions cannot serve as substantial evidence of the materiality of her substance abuse because they did not see records from her 2019 hospitalization,

4

which, according to her, show that her depression and anxiety did not resolve during a period when she was largely sober. *See id.* at 7-11.

I find no merit to this first point of error. The Plaintiff has not shown how records from her forty-five-day hospitalization in 2019 would have necessarily changed the opinions of Drs. Stahl and Houston as to her mental functioning without drug use, particularly when she was found with drug paraphernalia in the hospital bathroom, admitted to injecting heroin at least once while hospitalized, and acknowledged "going through the usual anxiety and depression symptoms following cessation of IV drug use." Record at 1646-47, 1677-80, 1684; Statement of Errors at 7; *O'Bannon v. Colvin*, No. 1:13-cv-207-DBH, 2014 WL 1767128, at *7 (D. Me. Apr. 29, 2014) (holding that a claimant must demonstrate why evidence unseen by medical experts "would necessarily have altered their opinions in a manner favorable to the" claimant in order to obtain remand on that basis).

The Plaintiff also attempts to undermine the ALJ's reliance on her normal mental status examinations when crediting Drs. Stahl and Houston, arguing that her mental health records are not as benign as the ALJ made them out to be. *See* Statement of Errors at 13-14 (citing Record at 798, 903, 1118-19, 1178, 1265, 1330). Nevertheless, the symptoms that the Plaintiff highlights—depression, anxiety, concentration issues, anxious picking of the skin, etc.—were all considered by Drs. Stahl and Houston when they rendered their opinions. *See* Record at 111-12, 116-17, 121-23, 126-28 (considering these symptoms and citing some of the same records referenced by the Plaintiff). Thus, any purported error in the ALJ's

5

consideration of the mental status examinations was harmless. *See Nathaniel-Bishop W. B. v. Kijakazi*, No. 1:20-cv-00323-JAW, 2021 WL 4147245, at *5 n.5 (D. Me. Sept. 12, 2021) (rec. dec.) (holding that any error in an ALJ's consideration of medical evidence was harmless where he properly relied on the opinions of medical experts who had reviewed the evidence), *aff'd*, 2021 WL 5750391 (D. Me. Dec. 2, 2021).

The Plaintiff further argues that the ALJ should have adopted Dr. Claiborn's "limitations to remembering, understanding, and carrying out simple to moderately complex tasks," which, according to the Plaintiff, would have essentially restricted her to jobs designated by the *Dictionary of Occupational Titles* (*DOT*) as requiring reasoning Level 2 and eliminated her ability to perform the job of security surveillance monitor, which requires reasoning Level 3. Statement of Errors at 12-17; *see* U.S. Dep't of Lab., *DOT* § 379.367-010 (4th ed., rev. 1991), 1991 WL 673244.[1] Even accepting this argument, however, the Plaintiff does not challenge her ability to perform the other jobs relied upon by the ALJ—which, in

---

[1] The Plaintiff also briefly challenges the ALJ's discounting of the work-preclusive limitations opined by her primary care provider Jennifer Watts, FNP-C. *See* Statement of Errors at 14-15. She points out that NP Watts attributed her limitations, in part, to ADHD, and contends that the ALJ "incorrectly reported that treating notes did not support the diagnosis of, or ongoing medication for, ADHD." *Id.* at 14. In actuality, the ALJ acknowledged that there were references to ADHD in the plaintiff's medical records but found that ADHD was not a medically determinable impairment because it did not appear to be a current diagnosis and multiple medical experts ruled it out as a condition. Record at 17. The evidence that the Plaintiff cites—a moderate to high score on an ADHD self-screening questionnaire, a provider's concerns about prescribing her stimulants while she was still using street drugs, and a discussion with that provider about increasing a different psychotropic medicine to treat her self-reported ADHD symptoms–does not meaningfully undermine the ALJ's findings on this point. *See* Statement of Errors at 14-15*; Archer v. Colvin*, No. 1:13-cv-00018-NT, 2014 WL 457641, at *3 n.3 (D. Me. Feb. 4, 2014) ("Remand requires a showing that the outcome of the claim for benefits would likely be different if the plaintiff's view of an issue is correct. This quibble does not meet that standard.").

6

aggregate, total 9,700 positions nationally—and, therefore, she has not shown that the Commissioner failed to carry her Step 5 burden. *See* Record at 25-26, 51-54, 107-08; *Vining v. Astrue*, 720 F. Supp. 2d 126, 137 (D. Me. 2010) (noting "that numbers of jobs in the ballpark of 10,000 to 11,000 nationwide have been held 'significant'"). This renders any error in the ALJ's handling of Dr. Claiborn's opinion harmless.

The Plaintiff does argue that the Commissioner should not be permitted to rely on aggregate job numbers.[2] She contends that this Court's decision in *Vining* requires numbers in the ballpark of 10,000 to 11,000 positions for *each* job relied upon at Step 5. She also points to language in 20 C.F.R. § 404.1566(b) that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s] are not considered 'work which exists in the national economy,'" and from the First Circuit's decision in *Seavey*, 276 F.3d at 5, that the Commissioner "has the burden at Step 5 of coming forward with evidence of *specific* jobs in the national economy that the applicant can still perform." (Emphasis added.) Finally, she suggests that allowing aggregation would be contrary to the liberal and remedial nature of the Social Security Act and would allow the Commissioner to always deny benefits at Step 5 by cobbling together an array of rare jobs until a

---

[2] After the Commissioner submitted her opposition, the Plaintiff filed a letter containing supplemental authorities on the basis that she "could not have anticipated that the Commissioner would seek to overturn *Vining*" by arguing in favor of aggregation. ECF No. 21. As the Commissioner pointed out at oral argument, the Plaintiff's letter is effectively a reply brief. Because reply briefs are not allowed under the current local rules, *see* Local Rule 16.3(a)(2)(B), I decline to consider the Plaintiff's letter. Nevertheless, I will consider the arguments she made and the authorities she cited at oral argument. I also note that, for the reasons discussed in text, aggregation does not conflict with—let alone overturn—this Court's decision in *Vining*.

sufficient number was reached in the aggregate. *See, e.g., McCuin v. Sec'y of Health & Hum. Servs.*, 817 F.2d 161, 174 (1st Cir. 1987) (noting "that the Social Security Act . . . is a remedial statute, to be broadly construed and liberally applied in favor of beneficiaries"); *Rodriguez v. Celebrezze*, 349 F.2d 494, 496 (1st Cir. 1965) ("[T]he Social Security Act is to be construed liberally to effectuate its general purpose of easing the insecurity of life.").

I find the Plaintiff's arguments on this point unavailing for several reasons.

First, neither *Vining* nor *Seavey* dealt with the issue of job number aggregation. *See generally Vining*, 720 F. Supp. 2d 126; *Seavey*, 276 F.3d 1. Second, although the jobs (other than the security surveillance monitor) relied upon by the ALJ exist in relatively small numbers individually, the positions that are available for each job exist in the national economy, which means they were not "[i]solated jobs that exist only in very limited numbers in relatively few locations" in contravention of 20 C.F.R. §§ 404.1566(b) and 416.966(b). Third, the Plaintiff overlooks language in 20 C.F.R. §§ 404.1566(b) and 416.966(b) that explicitly contemplates aggregation—"Work exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements [a claimant is] able to meet . . . ." (Emphasis added.) Fourth, "because the purpose of" Step 5 is to determine "whether a claimant could find work of any kind, there is no reason to require that there be a sufficient number of jobs in any one type of job." *Brownell v. Berryhill*, No. 17-11462-FDS, 2018 WL 3150222, at *14 (D. Mass. June 27, 2018).

8

Finally, the Plaintiff's position is contrary to the weight of authority on this issue, which undermines her argument that aggregation would somehow undermine the very purpose of the Social Security Act or allow the Commissioner to deny benefits in every case. *See, e.g., id.* ("There is no obvious problem with the ALJ's adding the numbers of jobs together."); *Dereck M. B. v. Berryhill*, No. 17-372JJM, 2018 WL 4941786, at *8 (D.R.I. Oct. 12, 2018) (rec. dec.) (considering the "aggregate identified jobs" numbers in the context of determining whether a claimant had demonstrated harmful error), *aff'd*, ECF No. 29 (D.R.I. Oct. 29, 2018); *Dashnaw v. Astrue*, No. 10-cv-456-SM, 2011 WL 5040708, at *6 (D.N.H. Oct. 24, 2011) (citing *Vining* and finding the aggregate number of positions for three jobs significant); *Kimberly R. v. Saul*, No. C19-2064-MAT, 2020 WL 6544700, at *3 (W.D. Wash. Nov. 6, 2020) ("Although Plaintiff urges the Court to consider whether each individual step-five job[] exists in significant numbers, courts aggregate the job numbers to determine whether the Commissioner's burden has been satisfied."); *Lash v. Comm'r of Soc. Sec.*, No. 12-13472, 2015 WL 3505875, at *3 (E.D. Mich. June 2, 2015) ("[C]ourts routinely aggregate numbers of jobs from different categories when determining whether available jobs exist in the national economy.").

Accordingly, the Plaintiff's challenge on this basis to the availability of the jobs other than the surveillance system monitor fails. *See* Statement of Errors at 15-16.

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be *AFFIRMED*.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: September 13, 2022

/s/ Karen Frink Wolf
United States Magistrate Judge